We have three cases on the docket today and Judge King is joining us virtually on Zoom and she is able to hear and ask questions and so she's participating fully that way and that's it's worked splendidly this week. Our first case is 2021-20385 United States of America v. Jesse Walker. Mr. Moran. Good morning Your Honor. May it please the court. My name is Tom Moran and I represent the appellant Jesse Walker. I thought I'd give you a quick outline of what I plan on talking about today. There's some issues that need just I think minor argument and then when I'm done with that I want to talk about municipal court warrants which I suspect is what the court wants to talk about too. Well I really I can't speak for my colleagues but I want to hear why the gentleman wasn't in custody. We've watched those videos and he's he's handcuffed at the back of his vehicle. They're searching his car even though he said he didn't want his car. They said you're not in custody but immediately thereafter they said he had outstanding warrants and they have his wallet so he can't really leave without his wallet. So why wasn't he in custody when he made the incriminating statement? Your Honor, I think both Judge Lake and the government at both the trial level and here has used the wrong test. They've used a subjective test on whether the officer wants to arrest him. And the proper test and I'm going to mispronounce his name. It's Begovina. It's said in the briefs as a person is in custody. Go ahead. Tell us what the test should be. A person is in custody when a reasonable person in the suspect's position would understand the situation constitutes a restraint on freedom of movement which the law associates with formal arrest. Your Honor, I think that when a man is handcuffed surrounded by two Houston police officers, one of them says I've got traffic warrants. I'll show them to you. I don't want to bullshit you. Which is exactly what Officer Polk said. Any reasonable person would think he was under arrest. And that triggers Miranda. Let me ask you a question. Yes, Your Honor. I've never had the honor of even being pulled over so I don't have any experience to draw on. But when a police officer thinks oh, you know, she's speeding and so I'm going to pull her over and issue you a ticket. What's the law on whether somebody, the police just pulling you over because you were ten miles over the limit and they're going to issue a ticket for speeding. Are you under, what's the law on the question whether if that's all they've got, are you under arrest at that point? No, Your Honor. You're certainly not free to leave. But what's the law say? Your typical traffic stop the Supreme Court has held is more of a Terry stop. I can't remember the name of the case. It's pretty well settled. And this court has even held that handcuffing them does not automatically convert it to a full custody arrest. But when they have his belongings and they've taken possession of his car, that does factor. I just, you know, unlike my learned colleague, I have been stopped for speeding. And I would, if you took away my, if you handcuffed me in back of my car where I can't get to the car, you've taken my wallet, you're searching my car even though I've said you don't have a warrant. And you said, oh, we have warrants for you, and that's what we're doing. And the officer said in his testimony that he always planned to arrest the person. How was he not in custody? I agree. He was in custody. And he was entitled to Miranda warnings before he was questioned. Okay. Well, I guess these are questions for the government. I think the government might want to talk to that. Do you have something else that you'd like to talk about? Well, a couple of other little things. On the credibility of the officers, we have got videotapes. Both officers testified that they'd reviewed the videotapes before the motion to suppress hearing. Foster, if you want the record site, his record on appeal 730. Polk, I don't recall where he said it. I think it's 741 to 42, but that's 693, sorry. It was Polk, and 730 was Foster. Said they reviewed the tapes. They got on that witness stand, and they testified my client said he did not have a driver's license. Testified, both of them testified to that. He didn't say that on the tapes. The videotape, he didn't say that. Under the Scott v. Harris case, we have to take the videotape over everything else if it clearly shows that. It's one of the few areas where an appellate court doesn't defer to a factual determination of a district court because if the video shows it plainly, this comes up usually in qualified immunity, and the gentleman did not say he did not have a driver's license. He was looking for his driver's license, pulling all this stuff out. As a matter of fact, Your Honor, if you look at Defense Exhibits 3 and 4, there are frames from the videos that show on the floor of the car by the driver's seat what appears to be a Texas driver's license. Right. There are gift cards. There's all kinds of papers, and there probably is a driver's license there, but we can't say for certain. But he never said he didn't have one. Oh, by the way, on being in custody. What's the point you have with this? I'm sorry. By the way. On being in custody, if it was just a cherry stop or a basic traffic stop, when that officer reached into my client's pocket and took out the wallet, that was an illegal search. So what is your argument? What do you seek us to do, and what legally can we do? Okay, on that, you can send it back to Judge Lake and keep out the— or you can take out the statements that he made and the fruits of those statements, which is the gun. Would the gun have been discovered inevitably? That's the government's position. Well, is that correct, or is it wrong? I don't think it was an inevitable discovery because, one, under the tow policies of HPD, they had to let him try and get somebody else to take the car, and they didn't do that. They said they waited a while, but nobody showed up. Did they actually call the woman Naya or something like that was her name? I don't know. Because the officer wouldn't let him call and said—the officer said he would use the phone and call. Did she even get called to come pick up the car? I don't know, Judge. I've never—there's nothing in the record about that. Also, there was talk about stopping him for an illegal left turn. If you look at the videos, Foster was asked about that by the federal agent, Ermey, and the first thing that comes out of Foster's mouth on the video was, no, it wasn't illegal. Right, but they were already swerving, so it doesn't matter, does it, if it was an illegal left turn or not. Well, what they said was he was driving crazy. Okay. I don't think that there's any question he was in custody. I don't think there was any question that they shouldn't have been asking him anything. When Officer Polk was talking to him, he was saying, well, have you got weed? So he didn't know there were any guns there. The second, Mr. Walker's statement to Foster that there's a gun there came in. The trial's over. If that was admissible, it's over. He's admitted that there was a gun and he knew it was there. So he's— So you're saying it doesn't matter whether they discovered the gun. So the inevitable discovery of the gun is—or does it still matter? Well, would there have been inevitable discovery if there hadn't been those warrants and they hadn't found the gun? Would they have seized the car and searched it? Well, you say if there had not been the warrants, well, there were the warrants. And that's a separate issue that you haven't quite addressed, but we certainly know what your position is on that. It seems to me that what you need to overcome is convince us that the warrants themselves, though they may not have been supported by probable cause, good faith exception for officers not aware of that they were not supported by probable cause is the way it could be analyzed, entitled to arrest them on that basis, impound the car, search it. Well, Your Honor, there's no question—well, first there's a question if there were warrants. If you look at Defendants 18— There are questions about the warrants. I'm aware of that. I don't know if— I'm not saying you waived anything. I don't know if warrants existed. I subpoenaed them up. They're not there. But even if there were warrants reviewed by a judicial officer, they're not supported by probable cause. Well, but that's where Leon and good faith actions by the officers comes in, where all they knew— I mean, I think you acknowledged—I may have this wrong, you correct me— the officers did not know that these warrants were not supported by probable cause, so they acted on the warrants based on what they knew in good faith— Your Honor, what you have— —and were not, therefore, entitled to arrest them on that basis. What you have is a situation where the city of Houston, as a matter of policy— Okay, but it comes down to what did the officers know at the time? Was it such that they would not have been acting in good faith? Your Honor, I don't think that the good faith exception from Leon and his progeny— I don't think the Supreme Court had in mind a government having a system where they issue warrants based on complaints that fail to show probable cause and not tell the police officers about it. The good faith exception is generally for one-off mistakes. For instance, I'm just looking at a couple of cases— Aaron, from the Supreme Court, where they forgot to remove a warrant from the computer system. Okay, that's a one-off. I have no problem with good faith on that. But to have a system adopted by the highest authorities in the city of Houston— It's in the record that there were, in 2020, there were 52,929 municipal court warrants issued by Houston Municipal Courts, according to the Office of Court Administration in Austin. I checked last night and through May this year. There were 28,707 warrants. Presumably they all used the same complaint. And every one of those complaints has been found by the Court of Criminal Appeals, under the Knox case, to fail to show probable cause. The city of Houston is just telling the courts, we don't care what you say. We're going to do what we want to do. So this is the case to fix that? I think this is the case where you can tell them, no, you're going to follow the law or else. Has police reliance on a warrants database, even where faulty, knowingly faulty, ever been found unreasonable in the context of an arrest in any jurisdiction, anywhere? I have not found anything like this. This is the closest thing I've—I've not found any other case, and I've looked, believe me, I've looked, where there was a systematic, government-sponsored, we're going to have complaints that don't show probable cause. And especially 40 years after the state's highest court had said the same complaints, failed to support probable cause and failed to support an arrest. It shouldn't take 40 years for the word to get from Austin to Houston on what the state's highest court says. And basically what the city of Houston does when you apply the good faith exception to those officers is they repeal the Fourth Amendment as to Houston police officers and municipal court warrants. If you just don't tell the officers that all these warrants are defective and the good faith exception will cover it. That's—I don't think that's what the Supreme Court had in mind in Leon and its progeny. I don't think that's what this Court had in mind in its good faith exception cases. I don't think that's what any Court had in mind. I promised the prosecutor I'd give some time back. I've got 13 seconds unless the Court has further questions. Thank you, Your Honor. Thank you, Mr. Moran. You've saved time for rebuttal. Thank you, and may it please the Court. Audra Maness for the United States. This Court should affirm the district court's denial of Walker's motion to suppress. The traffic stop was justified for three independent reasons. The questioning of Walker was reasonable, and the discovery of the gun in Walker's vehicle did not violate the Fourth Amendment. I'm happy to discuss the traffic stop and the three reasons justifying it, but I do understand that the Court's focus is on the questioning of Mr. Walker. So I'll start there. As a heads up, I am interested in the closing that your friend on the other side was making. There's a systemic problem in Harris County, Houston. I'm not sure this is the case to address it. Maybe it is, maybe it isn't. But I want to know what you say to his general allegations about all of that. Start where you want and don't forget. I'll address your question, Judge Southwick. The district court did suggest that the complaints underlying the warrants in this case were insufficient. I don't think the record is fulsome enough to make that determination. I will say I served as a volunteer prosecutor in traffic court a dozen years ago, and we had not only access to the complaints but also the underlying tickets. And then you'll notice, I know this wasn't argued in the briefs, but you'll notice that on the complaints in this case, which appear in the record 107 to 118, there is the issuing officer's name and badge number. So you have the individual who saw the violation occur on each of these complaints. It does not have the language that has been approved by Texas courts, saying that the affiant spoke with the officer who had personal knowledge. But you do have that officer's name on there. So this isn't quite a Knox case. It's not quite into the sufficient category of green, that Texas state court case. But there is an argument that the complaints, along with other information available to the judicial officer issuing the warrant, there may be enough there. When the opposing counsel said that he tried to subpoena the warrants and couldn't find them, can you address that? I can, Your Honor. The only thing in the record is he did issue a subpoena for all records, and what he received was the complaints. And I do not know why he did not receive the underlying traffic citations or computer records that the municipal court would have. And again, though, I don't think this is the case to answer this issue because we have other reasons justifying the traffic stop, right? We have the fact that Mr. Walker was speeding, and that's a factual finding that's really not contested on appeal. We have the illegal turn. We have the officer's reasonable suspicion that criminal activity was afoot. He was in a high-crime area, exiting a high-crime parking lot. He was acting funny from the get-go, and then his driving behavior, pulling into the Texaco down at Hillcroft, was suspicious, and the officers had reason to flip on their lights at that point and stop him, independent of their computer records check. And I will say, again, the fact that we have all of these cases also saying officers can reasonably rely on computer records, right? They can rely on them in checking insurance, in looking for warrants, and that's what the officers relied on here. They didn't have the underlying complaints. They didn't have any of this background information, and so they acted in good faith in relying on their computer records. This is what they do. So the traffic stop is justified not only because of the warrants that came back on the computer records, but also because of all of Mr. Walker's suspicious activity. I'm sure this is a significant part of the case. Your experience in traffic court may help you with it. This illegal left turn going all the way across three lanes into the far lane, someplace in the municipal code it says that's improper? Yes, Your Honor. I believe it's Texas. It's Texas Transportation Code 545.101. I believe it's Section E. What does it say you can't do that he did? You must, when you are turning left on an intersection, you must take the far left lane of the closest lane you can turn into. Exactly, and he took the right lane. Yes. So the officers were justified in stopping Mr. Walker. Then the question becomes, did they act reasonably in performing that traffic stop? Could we cut to the chase of whether or not inevitable discovery would apply here? Yes, Your Honor, we can. Would it apply? It seems like there might be a problem with it because of the fact that the car shouldn't have been impounded. It should have been first they should have called the person they said they were going to call, and there's no evidence that they actually made any effort on that as far as I can see to do that. It looked like he was just kind of brushing off the gentleman, Mr. Walker, rather than actually intending to call the friend and get the car picked up. So I think what the record does show is that at some point someone called, I believe it was Mr. Walker's father, because he does show up after the car has already been hitched to the tow truck. But what about the girlfriend that was supposed to be called who was so nearby? I don't have a record site for you, but I believe they weren't able to reach her. Okay. That's in the record? I believe so, yes, Your Honor. And so eventually they were able to get a hold of Mr. Walker's father. And at this point, I believe it's an hour has passed or close to an hour, and he's parked at a gas pump, which is you can't leave the car there. And even if Mr. Walker's father or Mr. Walker's girlfriend had showed up earlier, say 30 minutes into the traffic stop, the officers still would have needed to perform an inventory search. That's HPD policy. And both officers testified to that. So the car would have been searched, and the gun would have been discovered. There's also others. Why does HPD have a policy to do an inventory search on cars that it's not taking possession of? It seems like a very invasive way to get around some sort of warrant requirement, doesn't it? I would disagree, Your Honor. I think it falls within safety concerns, like the protective sweep that we recently saw discussed in United States v. Rodriguez last month. You're going to inventory everything in that car that is being driven away by someone else? As I understand it, an inventory search can occur fairly quickly, within 10 to 15 minutes, so they would have been able to inventory and release it. Has the Supreme Court upheld an inventory search in those circumstances? I am not aware of a case from the Supreme Court upholding an inventory search. Have we upheld an inventory search under those circumstances? Where the car has then been released to another individual? It was clear that the other person was coming to pick up the car, and so the police were never going to take it to the impound lot. I don't have a case name for you, Your Honor. I do believe the court has at least discussed, maybe not as it was raised as an issue, but has discussed inventory searches when a car has been released to a third party. It hasn't questioned that practice. But in any event, you say too much time passed in this case to pick up the car, and so it was already being taken away to the lot. That's right, Your Honor. And so under HPD policy, of course, it would have been inventory. There was also the very real possibility at the time that they are questioning Mr. Walker or right before they questioned Mr. Walker, say they found his license in his pocket, like he said he thought his license was in his pocket. It's on the floorboard, isn't it? It could have been a gift card. I've looked at the video. I can't say for certain it's a license. He was never able to produce it. It ended up not being on his person. But if it had been on his person, again, that Rodriguez case, the officer still would have been able to do a protective sweep of the car before they released Mr. Walker if they decided in their discretion not to arrest him on the traffic warrants. So there's a number of ways the gun would have been inevitably discovered, including, as the district court found, there's the public safety or an officer safety exception. That seems to be kind of an exception that swallows the rule in that there's really not a public safety threat to the officer with a gun in the glove compartment when the gentleman is handcuffed at the back of his vehicle. If you said that, that would mean that you can search thoroughly any premises. That exception seems too broad here, doesn't it? I think, Your Honor, again, the rule is to consider all the circumstances of the stop. They're in a high-crime area. They have a man who's been fiddling around in his car and not following commands. Yes, at this point they've handcuffed him, but they don't know what's in that car. The door is still open if the gun is right in the door console. But he's so far away from the door, and he's handcuffed, and they're holding him. It got him lodged up against the car with the other guy, the other officer. And there are times when suspects during traffic stops fight the officers. It is a very real possibility, and so I think the public safety exception here does apply. Do we have a case that would extend it this far? Well, Your Honor, there is. I don't think where the public safety exception was applied, but there are cases where the officers have used that level of restraint, and it has been justified, even used more restraint by having somebody at gunpoint or on the floor. We still haven't talked about custody, but you're an experienced prosecutor. Can you tell us what is the theory that you believe is the appropriate theory in this case? Your Honor, I do agree it's an objective standard. I'm not talking about the standard for custody. You want us to affirm, I assume, as your brief says. Which of these many different ways that you're putting up for us is the correct, linear, straightforward way that's right in the center of the wheelhouse of the Supreme Court and our precedent? I think the number one path, Your Honor, is the traffic stop was justified, the questioning was reasonable, and there was no arrest until the officers found the gun in the vehicle. At that point, the defendant was detained, was properly Mirandized by Agent Kai Arame, and was subject to additional questioning, which was all constitutionally permissible. Well, that does take us to the issue of custody. It does seem to me that there's some disconnect, perhaps, from the standard as articulated and the facts that is found to satisfy at times. If it's a reasonable person's standard, would a reasonable person feel that they are under arrest or otherwise in custody? And we have held, consistently with other courts, that somebody being handcuffed is not necessarily, I don't know if that computes, but nonetheless, that's the law, so we can start there. This fellow, though, it seems to me what is different about this case from any precedent I think you showed us, is that somebody has already mentioned traffic warrants. That word warrant sounds like an arrest. This is quite a combination of factors still to say the fellow, a reasonable person. I think it might be a crazy person who wouldn't think he wasn't under arrest. So you want to help me with why? Is there a case that you think fits fairly well these facts? I have a warrant for you. It doesn't say warrant for arrest, but that's what it probably sounds like to a reasonable person. And I'm handcuffed. And then you say these protective things the police officers do. You're not in custody, which I think is a factor, but not a significant one. So what's your best help to me on that's not custody? Your Honor, I don't have a case for you where we've had this specific conversation occur, where the defendant has been told he has to be handcuffed. But I think the combination is there's a warrant, which I think implies an arrest warrant, and you're handcuffed. Yes. And what I can say to that, again, it is an objective standard, but I would also consider the defendant's experience. These warrants go back to 2011. He's gathered up quite a few traffic warrants over the year. He's been pulled over again while he's had outstanding warrants. So somebody, a reasonable person in that situation, I've had traffic warrants. I've gotten out of getting arrested on them before. And then is it reasonable, all of the officer's actions? Yeah, it's reasonable to temporarily handcuff the defendant in a high crime area when he's been fiddling around in his car. It's the officer's headset, and I think it's important that Officer Polk said as they were getting the defendant out of the car, hey, you're not under arrest. You've got warrants, but you're not under arrest. And so the defendant has been told this is essentially temporary. We're doing our investigation. And then there was no, again, there's no higher level of force use. He's not placed on the ground. He's not placed in the squad car. The officers don't pull their weapons. And this is all occurring, this time span is a minute when this occurred, a minute from when he gets out of the car to when he admits to having the gun. It's a very short period of time in an open public area, and the most minimal, reasonable level of force is being used. And, yes, he has been told he has warrants, but he's been carrying these warrants around for years. He's told he had to get out of the car. He didn't want to get out of the car. He's been, they've taken his wallet. That is part of the totality, and we've said where you don't have your ID, you can't go and you don't really reasonably believe you can leave when they haven't given you your ID back. Now, I understand that his wallet is probably not his ID, but it's still his wallet. It is, Your Honor, and he had told the officers that he thought his license was in his pocket. So I think that's implicit consent. Having your wallet taken is another reason to believe that you're in custody. And having your car searched when you're saying, don't search my car, and you have no power over that, and they're searching your car, and they're not just doing some sort of sweep by the perimeter. They're going through the entire glove compartment multiple times. They're going through all kinds of things. After he has admitted there was a gun in there. But before that, even, they were going through the car. They were, as they were getting them out and they started. Yes, they were already going through the car, and he said, what are you doing? You don't have a warrant for that. Can you do that? Is that lawful? Yes, Your Honor, it is. You can search people's cars thoroughly without, it's not a safety search, because they're searching every nook and cranny without a warrant when the person is standing there objecting. The person was just rooting around in his car. He has a felony record. He was driving erratically. He's in a high-crime area. Yes, the officers can secure the area and secure the situation as part of the search. Search every nook and cranny of someone's vehicle without a warrant when the person is objecting. I wouldn't go so far as to say every nook and cranny, and I don't think that the officers were going that far. But I do think their actions were reasonable under the circumstances. Okay. What if we don't think, and I'm not foreshadowing, that that series of events was reasonable because of the wallet and the handcuffs and the warrants and the whole totality? Then what? If the court determines that a formal arrest occurred as the officers were pulling the defendant out of the car, for example, then I think the public safety exception applies as the district court held. But you don't have a case under these kind of circumstances? Not under these specific circumstances. So you have a case under the inevitable discovery under these specific kind of circumstances. This seems like to be at the edge of all the different exceptions. Your Honor, and that may be why we're here at argument, is this is a specific fact pattern, but I still think we fall within the public safety exception given the case law that we have. Do you have anything further? If there's nothing further, no, I'll take my seat. Thank you. Thank you very much. Mr. Moran, you save time for rebuttal. Just a couple of quick points, Judge. Judge Elrod, you asked about officer safety in the search. He was handcuffed. He was in the custody of two Houston police officers. There was an armed Houston police officer between him and the door of the car. He wasn't getting to that center counsel when he was out of the car. There was no issue of officer safety. Counsel, I think part of officer safety includes if there's nothing found necessarily to create probable cause, you release the fellow. He gets back in the car where a power arm might be located or other dangerous weapon. It seems to me the case law would support that the safety isn't just why he's handcuffed. It's the safety that will still need to exist until the interaction is completely over. Well, Judge, there has to be some sort of a threat to safety or some reasonable reason to think that there's an officer safety problem. You can't just say it's officer safety so I'm a police officer, I can do whatever I want to do. Well, but I do think generally when you stop a car, an officer safety includes making sure there's not a gun in the car. You don't need to think this is a bad person, therefore I can search. I mean, I don't think I have the case law wrong, but I don't think that is a prerequisite for searching for firearms in a car if you're concerned about officer safety. Judge, I'm from a state where you can carry a gun in your car. And does that mean that because the law allows me, without a permit, to carry a gun in my car, that every time I get stopped for going 36 into 35, the officer has a right to search my car for officer safety? Not sure. I don't think so. I think that's going a little too far. The inventory search, or inventory is not a search, the inventory, the video shows it started within seconds after the gun was found. Before there was anything to do with taking the car into custody. To inventory a car, the police have to be towing it, have to take it into their custody. The opposing counsel says that's not true and that they can just inventory a car when someone else is taking the car. Well, I'd like to see a case that says that. Every case I've ever seen says that inventory is part of the taking it into police custody to protect the police from claims of stolen property and to protect the owner of the car from having their property stolen. It's not to give the car to somebody else. Let's see. There was no probable cause when they started searching that car that there was a gun in there. Or when they started questioning my client, rather, that there was a gun in that car. No more probable cause, and is there one in my car or any other Texans' car? Lord knows we love our guns. One thing, I think, Judge Elrodo, was the question that you had about warrants. I think that the record allows you to infer that there were no warrants ever issued. And why can't we infer that, because you requested them and didn't get them? We requested them. The custodian record said here's what complies with the subpoena, and there's nothing there. So the complaints are totally made up? No, the complaints, Your Honor, a complaint— I'm sorry, help. Okay, in Texas municipal courts, a complaint serves two functions. Function one is it's a charging instrument. Those complaints you see are charging instruments, and they're perfectly acceptable charging instruments. The Knox case says that from the Court of Criminal Appeals. The second thing is a complaint can serve as a basis for an arrest warrant.  Okay, so the complaints were issued, but you think there was no warrant ever issued. I can't find a warrant. But the database says there were warrants issued, and you want us to infer that there weren't. Well, Judge— Because they're missing. Where are they? You've got like ten cases, not a warrant to be seen. Thank you, Your Honor. We note that you are court appointed, and we appreciate your service, Mr. Moran. Thank you. Thank you, Judge. This case is submitted, and we appreciate both arguments.